Alan L. YEGGE and Janice L. Yegge, Appellants,

v.

**INTEGRITY MUTUAL INSURANCE COMPANY, Appellee.**

No. 94–1135.

Supreme Court of Iowa.

July 19, 1995.

David L. Leitner, Johnston, for appellants.

Gregory A. Witke, Barbara A. Hering, and Elizabeth A. Raymond of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

An insurer, having provided a business liability policy to a building contractor, denied coverage when the contractor was sued by homeowners in a dispute arising from construction of a residence. The homeowners, successful in the litigation but unsuccessful in their attempts to collect on the judgment against the insured contractor, then brought this suit against the insurer pursuant to a statute that allows them to enforce a judgment by "stepping into the shoes of" the judgment debtor.

Partly by way of summary judgment, but largely on the basis of a trial on stipulated facts, the trial court determined that the policy provided no duty to indemnify the insured under these circumstances and hence there was no duty to defend. We agree.

Plaintiffs Alan L. Yegge and Janice L. Yegge, who are husband and wife, hired New Way Construction Co., Inc. (New Way) to build a residence. New Way, which had purchased a general business liability insurance policy from defendant Integrity Mutual Insurance Company (Integrity), asked for a defense and for indemnity under that policy. Integrity however determined the policy provided no duty to indemnify on the Yegges' claim and, because the duty to defend is coterminous with the duty to indemnify, refused to do either.

The Yegges won their lawsuit against New Way, recovering a judgment for $18,000 in compensatory damages and for $40,000 in punitive damages. The judgment remains unsatisfied. The Yegges then filed this suit

under Iowa Code section 516.1 (1993),[1] seeking payment of the unsatisfied judgment against New Way from Integrity. The Yegges also sought bad faith and punitive damages against Integrity.

Both parties filed motions for summary judgment. The trial court denied the Yegges' motion for summary judgment and granted summary judgment to Integrity on the bad faith and punitive damages claims. The parties then submitted the remainder of the case on stipulated facts, after which the trial court entered judgment for Integrity. The matter is before us on the Yegges' appeal from the trial court judgment.

Our review is for correction of errors at law. Iowa R.App.P. 4.

The Yegges brought their suit against New Way in five counts: (1) breach of contract; (2) breach of express warranty of fitness for a particular purpose; (3) breach of implied warranty; (4) negligence; and (5) fraud. They sought damages for cost of labor, material, and supplies necessary to complete the residence to their satisfaction; disruption of their lives; impairment of their business; increased expenses; diminished investment value; and emotional distress.

Claiming a failure on the part of Integrity, the Yegges point to the rule that specifies an insurer's duty to investigate. *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117, 119 (Iowa 1984) (inquiry must sometimes be expanded beyond scope of petition). They also point to the rule that raises a duty to defend whenever there is potential or possible liability to indemnify based on facts appearing at the outset of the case. *Id.* These rules do not alter a more controlling one that

precisely equates the duty to defend with the duty to indemnify. The two duties are clearly coextensive; Iowa law is well-settled that there is no duty to defend unless there is a duty to indemnify. *West Bend Mut. Ins. Co. v. Iowa Iron Works*, 503 N.W.2d 596, 601 (Iowa 1993); *First Newton Nat'l Bank v. General Casualty Co. of Wis.*, 426 N.W.2d 618, 623 (Iowa 1988).

■ I. The general business liability policy provided coverage for "bodily injury" or "property damage" caused by an "occurrence" and for "personal injury" or "advertising injury" resulting from certain specifically mentioned causes. Not one of the Yegges' five counts sought recovery for anything covered by the policy. The subject of the counts did not qualify as property damage within the policy's definition[2] because they are intangible economic losses. *See Kartridg Pak Co. v. The Traveler's Indem. Co.*, 425 N.W.2d 687, 690 (Iowa App.1988) ("intangible damages, such as diminution in value ... not physical injury to or destruction of tangible property").

■ In addition to damages to the residence itself, the Yegges claim only emotional distress. There was no coverage for this claim because the jury, in the underlying case, awarded no damages for emotional distress. *See North Iowa State Bank v. Allied Mut. Ins. Co.*, 471 N.W.2d 824, 827–28 (Iowa 1991) (judgment actually rendered controlled determination of insurance coverage).

■ II. The conduct of which the Yegges complain did not constitute an "occurrence"

---

1. Iowa Code § 516.1 states:
   **Inurement of policy.** All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced the insured's claim against such insurer had such insured paid such judgment.

2. According to the policy "property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

under the policy definition.[3] New Way's alleged failures giving rise to Yegges' claim included breach of contract, breach of express warranty, breach of implied warranty and fraud, none of which involve accidental conduct.

 III. The Yegges essentially rely on Iowa Code section 516.1 and the insurer's undoubted duty to carefully investigate a claim before denying coverage. They vigorously complain because Integrity based its denial, not on the basis of any exploration of evidence supporting Yegges' factual claims, but rather on a comparison of the nature of those claims with its own understanding of the coverage afforded by the policy.

Under the circumstances Integrity had no duty to undertake an exhaustive investigation of the Yegges' evidence. The suit against New Way was, from beginning to end, a claim of poor performance in constructing a residence. Yegges would convert a routine business liability policy into a performance bond, clearly a risk Integrity did not undertake.

The trial court was correct in so holding.

**AFFIRMED.**

---

**3.** Under the policy, "occurrence" means "an accident including continuous or repeated expo- sure to substantially the same general harmful conditions."