# IN THE COURT OF APPEALS OF IOWA

No. 23-1308
Filed October 30, 2024

**JOHN DOSTART and DEENA DOSTART,**
        Plaintiffs-Appellees,

**vs.**

**COLUMBIA INSURANCE GROUP,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Coleman McAllister,
Judge.

An insurance company appeals an interlocutory order of the district court
denying its motion for summary judgment on judgment creditors' claim for payment
of an unsatisfied judgment against one of the company's insureds under Iowa
Code section 516.1 (2022). **AFFIRMED**.

Michael A. Carmoney and Allison J. Frederick of Carmoney Law Firm,
PLLC, Des Moines, for appellant.

Billy J. Mallory and Trevor A. Jordison of Mallory Law, West Des Moines,
for appellees.

Heard by Badding, P.J., Langholz, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2024).

**LANGHOLZ, Judge.**

This insurance coverage dispute under Iowa Code section 516.1 (2022) presents many interesting legal questions. But we cannot resolve most of them yet in this interlocutory appeal because we generally must apply law to facts. And at bottom, this summary-judgment record lacks sufficient evidence to hold, as Columbia Insurance Group urges us to, that the insurance policy it issued does not cover the consumer-fraud judgment entered in favor of John and Deena Dostart. The necessary factual findings of an unsatisfied judgment alone may sometimes be enough to resolve a coverage dispute at summary judgment. But not this consumer-fraud judgment nor this insurance policy. And especially not when Columbia disclaims any argument that consumer fraud could never be covered by the policy. We thus affirm the district court's denial of summary judgment.

I.

*The Unsatisfied Judgment.* In April 2022, a jury awarded the Dostarts $200,000 in compensatory and statutory damages on their claims of consumer fraud against a construction company (and its owner) that built them a new home. The jury returned a general verdict on the claims, agreeing that "the Dostarts prove[d] their consumer fraud claim against" each defendant. And it found that each defendant's "consumer fraud constitutes a willful and wanton disregard for the rights or safety of another." So it found each defendant liable for $8,795.85 in statutory damages.[1] And it split the award of compensatory damages between the two defendants roughly two to one—finding the company caused $118,808.30 in

---

[1] The jury instructions and verdict form used the term "Exemplary Damages," rather than the term in the Iowa Code: "statutory damages" *See* Iowa Code § 714H.5(4).

actual damages for "[t]he reasonable cost of completing the home" and its owner caused $63,600 in damages for "[c]osts associated with temporary living, moving expenses, and loan extension."[2] The district court later also awarded the Dostarts $88,166.52 of attorney fees, assessed costs to the defendants, and entered judgment in the Dostarts' favor.

Throughout this consumer-fraud proceeding, the company's insurance provider, Columbia, defended the company and its owner under their commercial-general-liability insurance policy, subject to a reservation of rights that Columbia might withdraw its defense or decline to indemnify them. Shortly after the verdict, Columbia informed them that the verdict was not covered by the policy. So Columbia declined to indemnify the judgment and withdrew its defense.

*This Suit.* Despite their win in court, the Dostarts were unable to collect on their judgment from the construction company or its owner. So 180 days after the entry of judgment, they sued Columbia, seeking payment of the unsatisfied judgment under Iowa Code section 516.1. That statute lets a judgment creditor, like the Dostarts, stand in the shoes of the insured to bring a direct action against the insurer. *See* Iowa Code § 516.1.

Columbia moved for summary judgment on the Dostarts' claim. It argued that four provisions in the 154-page insurance policy precluded coverage for their unsatisfied judgment. First, noting that the policy only covers damages "caused by an 'occurrence,'" which is defined in the policy as "an accident," Columbia argued that the "fraud" causing the Dostarts' damages was not accidental and thus

---

[2] The jury also rejected the Dostarts' breach-of-contract and breach-of-express-warranty claims against the construction company.

not a covered "occurrence." Second, it argued that the damages were not "because of 'bodily injury' or 'property damage'" as also required by the policy. Third, it argued that the fraud falls within the policy's exclusion "for loss which results from an act committed by or at the direction of an insured with the intent to cause loss." And fourth, it argued that the statutory-damage awards fell within the policy's exclusion for "punitive or exemplary damages."

To support its argument about the conduct leading to the consumer-fraud judgment, Columbia attached only the jury's verdict form, excerpts from the jury instructions, the court's entry of judgment, and the pleadings. The only facts admitted in the pleadings were the identity, location, and relationship of the two defendants. Columbia presented no affidavits or other direct evidence of the construction company or its owner's interactions with the Dostarts during the construction of their home.

The Dostarts conceded that the statutory-damage awards were excluded under the policy. But they otherwise resisted summary judgment. They responded that Columbia's arguments about the definition of occurrence and the intentional-act exclusion were off-base because their judgment was under the consumer-fraud statute. *See* Iowa Code §§ 714H.3(1), 714H.5. That statute—unlike common-law fraud—they contended, does not require an intent to deceive or even knowledge of a misrepresentation or omission. They also argued that their compensatory damages were indeed because of property damage and submitted an expert report documenting property damage to their home that they contended creates a fact dispute on that question.

Given the Dostarts' concession on statutory damages, the district court granted summary judgment on the part of their claim seeking to recover on those awards. The court denied the rest of Columbia's motion. The court reasoned that it could not "conclude, based on the record presented, that [the Dostarts'] recovery against Columbia's insured was based on what was the functional equivalent of a common law fraud claim." The court noted that "liability may be imposed under the consumer fraud statute without the need to establish the same degree of proof as is necessary to recover under a common law fraud claim" and that "a knowing violation of the consumer fraud statute is not necessarily the functional equivalent of the commission of an intentional tort." So the court held that it could not say as a matter of law that "the insured's actions in this case did not fit within the definition of an 'occurrence'" under the policy or that "the intentional act exclusion applies." The court also decided that a fact dispute remained about whether the insured's actions caused property damage, reasoning that the verdict form's categories of damages were not defined and that the Dostarts had submitted "an expert witness report that, when taken in the light most favorable to [them], supports a conclusion that property damage did result from the actions of Columbia's insured."

The supreme court granted Columbia's application for interlocutory review of this ruling and eventually transferred the appeal to our court.

II.

Under Iowa Code section 516.1, successful plaintiffs who were "injured or whose property [was] damaged" by an insured defendant may seek payment on their judgment from the insurer if execution on the judgment (trying to recover from the insured defendant) is "returned unsatisfied." Iowa Code § 516.1. In such a

suit against the insurer, the plaintiffs have the same right to enforce "the insured's claim against such insurer" that the insured would have if the insured had paid the judgment. *Id.* So a suit under section 516.1 is essentially an insurance coverage dispute litigated by the parties with the most skin in the game—the successful plaintiffs in the underlying tort suit—rather than the judgment-proof-but-insured tort-suit defendant. *See Pries v. M.F.A. Mut. Ins.*, 122 N.W.2d 925, 927 (Iowa 1963) (noting that section 516.1 "is designed to correct an injustice which might occur should an insolvent insured refuse to sue his insurance company to force payment under the terms of the policy").

Resolving the coverage dispute requires deciding the factual issues of what conduct the insured defendants engaged in that led to liability in the unsatisfied judgment. Sometimes, a party in the section 516.1 proceeding may be able to rely on issue preclusion to prove a fact that was necessarily decided in the underlying tort suit. *See Schneberger v. U.S. Fid. & Guar. Co.*, 213 N.W.2d 913, 916–18 (Iowa 1973) (holding that issue preclusion applied to a section 516.1 claim under one policy because the original suit decided a fact question of a car owner's consent but that it did not apply to a claim under the second policy where the dispositive question of that insured's consent was not decided in the original suit). But when the issue was not decided—for example, because the basis of liability in the underlying suit is broad enough to include both conduct that would be covered and excluded by the policy—then the conduct must be proven with evidence in the section 516.1 proceeding. *See Dolan v. State Farm Fire & Cas. Co.,* 573 N.W.2d 254, 257 (Iowa 1998) (holding that a negligence verdict did not preclude the insurer from raising intentional-tort exclusion because "[n]egligence and

intentional torts are not mutually exclusive concepts" and finding defendant's conduct was intentional based on evidence of the conduct submitted at the bench trial on the section 516.1 claim); *Schneberger*, 213 N.W.2d at 919 (reversing grant of summary judgment that improperly relied on a prior suit that did not decide dispositive factual issue and remanding for further proceedings).

Disputes about the facts material to an insurance coverage claim under section 516.1—as with any claim—are resolved at trial. But the district court must grant a party's motion for summary judgment when the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). In resisting summary judgment, the nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response . . . must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). Still, "[t]he burden of showing undisputed facts entitling the moving party to summary judgment . . . remains with the moving party at all times"—it "cannot shift the burden to the other party through a conclusory motion . . . not supported by undisputed facts." *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 496 (Iowa 2019). We review a district court's denial of summary judgment for corrections of errors at law. *Hagenow v. Am. Fam. Mut. Ins.*, 846 N.W.2d 373, 376 (Iowa 2014).

Columbia seeks to cut off the Dostarts' suit by arguing that it is entitled to summary judgment because we can decide as a matter of law that the insurance policy does not cover the Dostarts' consumer-fraud judgment. As in the district court, Columbia offers three arguments that would independently defeat coverage for the judgment: (1) the consumer fraud was not a covered "occurrence" under

the policy; (2) the consumer fraud fell within the intentional-act exclusion of the policy; and (3) the judgment was not because of "property damage." Because Columbia's arguments based on the definition of a covered "occurrence" and the intentional-act exclusion are closely related—and are the focus of Columbia's appeal—we address them together at the start.

*Covered "Occurrence" and Intentional-Act Exclusion.* The commercial-general-liability policy issued by Columbia to the construction company found liable to the Dostarts only covers damages "caused by an 'occurrence.'" And the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Similarly, the policy's intentional-act exclusion excludes from coverage "loss which results from an act committed by or at the direction of an insured and with the intent to cause loss." These are standard policy terms that are thus often interpreted and applied by the courts. *See Nat'l Sur. Corp. v. Westlake Invs., LLC*, 880 N.W.2d 724, 733 (Iowa 2016). And so, Columbia relies heavily on a previous case, *Yegge v. Integrity Mut. Ins.*, 534 N.W.2d 100 (Iowa 1995), that it contends is "extraordinarily similar."

*Yegge* indeed also involved a suit by homeowners to recover on an unsatisfied judgment against their construction company from the company's insurer under section 516.1. *See Yegge,* 534 N.W.2d at 101–02. The underlying conduct there "giving rise to [the] Yegges' claim included breach of contract, breach of express warranty, breach of implied warranty and fraud." *Id.* at 103. And applying the same policy term here, the supreme court held that the conduct "did not constitute an 'occurrence'" because it did not "involve accidental conduct." *Id.* at 102–03. So Columbia contends that based on *Yegge*, we must hold that the

consumer-fraud conduct here was not accidental and thus is not a covered "occurrence" and likewise is excluded as an intentional act. But *Yegge* cannot support the weight Columbia places on it for two reasons.

First, the court in *Yegge* held only that *common-law* fraud is not accidental and thus cannot be an occurrence under the standard policy term. *See Yegge*, 534 N.W.2d at 102. It did not consider a private consumer-fraud claim—nor could it since that statute was not enacted until more than a decade later. *See* 2009 Iowa Acts ch. 167. And the elements of a common-law fraud claim and a private consumer-fraud claim are not the same. Common-law fraud requires, among other elements, an intent "to deceive" and knowledge that "the representation was false." *Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012) (cleaned up).

But private consumer fraud contains no such requirements. It requires only "intent that others rely upon" the conduct. Iowa Code § 714H.3(1). It requires not knowledge of falsity but merely negligence. *See id.* (prohibiting conduct "the person knows *or reasonably should know* is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact" (emphasis added)). And the conduct sweeps more broadly than the false representations of common-law fraud.[3] For

---

[3] The jury instructions submitted in the summary-judgment record show that the Dostarts relied only on conduct that was "a deception, fraud, false pretense, a false promise, a misrepresentation, or a concealment, suppression, or omission of facts." But if the jury had not been instructed that narrowly, the scope of conduct that could be a consumer-fraud violation sweeps even more broadly to include unfair practices and a laundry list of other assorted statutory violations. *See* Iowa Code § 714.16(1)(i) (defining "unfair practice" to mean "an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces"); *id.* § 714H.3(2).

example, a deception includes "an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts." *Id.* § 714H.2(5). Given the breadth of conduct that could lead to a consumer-fraud judgment compared to common-law fraud, the holding in *Yegge* that common-law fraud is not accidental conduct does not control here. We cannot say as a matter of law that a consumer-fraud judgment is intentional rather than accidental.

Columbia does not contest the broad scope of the consumer-fraud statute. Indeed, in its briefing to us, it disclaims taking the position that "consumer fraud can *never* be an occurrence under the policy." (Cleaned up.) Columbia instead argues that we do "not need to decide whether, hypothetically, consumer fraud can ever be 'an occurrence'" because "under the specific circumstances of this case, [the insured defendants'] consumer fraud is not an 'occurrence' covered by" the policy.

But that brings us to the second difference between this case and *Yegge*— we have no evidence about the specific facts giving rise to the unsatisfied consumer-fraud judgment. The claim for payment on the judgment in *Yegge* was decided after a bench trial on stipulated facts.[4] *See Yegge*, 534 N.W.2d at 102. Yet here, Columbia asks for a decision in its favor on summary judgment. And despite making a facts-of-this-case-specific argument, Columbia presents no evidence of the underlying facts in support of its summary-judgment motion. The closest it comes is submitting the jury verdict, jury instructions, and entry of judgment. True, that evidence shows the Dostarts got a judgment against

---

[4] The district court in *Yegge* only decided separate claims for bad-faith and punitive damages on summary judgment. *See Yegge*, 534 N.W.2d at 102.

Columbia's insured for consumer fraud. But it tells us nothing specific about the conduct giving rise to that judgment—such as whether that conduct was intentional.[5] And Columbia presented no witness testimony, exhibits, or other evidence from which a factfinder could find that the conduct was intentional rather than accidental.

Columbia tries to work around this absence of facts by contending that we can conclude as a matter of law that the consumer fraud here was intentional rather than accidental because the jury awarded statutory damages after finding that the insured defendants' "consumer fraud constitutes a willful and wanton disregard for the rights or safety of another." But "persistent reckless conduct"—not just intentional conduct—can satisfy this willful-and-wanton-disregard standard for statutory damages. *Bradshaw Renovations, LLC v. Graham*, No. 22-1721, 2024 WL 4368669, at *7–8 (Iowa Ct. App. Oct. 2, 2024) (cleaned up); *cf. Miranda v. Said*, 836 N.W.2d 8, 34 (Iowa 2013) (holding, under the general punitive damages statute with nearly identical text, that substantial evidence in the record to infer recklessness supported the punitive-damages award). So without more facts, we cannot say as a matter of law that the consumer-fraud conduct here was intentional merely because the jury awarded statutory damages.

---

[5] Columbia never expressly relied on issue preclusion, nor argued that its requirements were met, to prove any facts underlying the unsatisfied judgment. *Cf. Dolan*, 573 N.W.2d at 256. But even assuming Columbia was implicitly seeking to prove some facts through issue preclusion with the judgment, as discussed above, given the scope of the consumer-fraud claim submitted to the jury, we cannot say the jury necessarily decided the conduct was intentional. *See id.* at 256–57; *Schneberger*, 213 N.W.2d at 916–18.

In sum, Columbia has failed to meet its summary-judgment burden to "show that there is no genuine issue as to any material fact and that [Columbia] is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3); *see also Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999) (holding in an insurance-coverage dispute it was the insurer's burden at summary judgment to "negate the policy provision requiring unexpected and unintended injury"). We lack any basis in the record to hold that the unsatisfied consumer-fraud judgment did not involve accidental conduct. And so, the district court properly denied summary judgment on the grounds that the consumer-fraud conduct was not a covered occurrence or was excluded as an intentional act.[6]

*Property Damage.* Columbia's final argument for lack of coverage also suffers from a lack of undisputed facts. Under the policy, damages are covered only when "because of 'bodily injury' or 'property damage.'" No one contends the consumer-fraud judgment involved bodily injury. And the policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."

---

[6] We recognize that the supreme court has held that a claim for defective construction is not an occurrence under a commercial-general-liability policy because that conduct is not "an undesigned, sudden, and unexpected event." *Pursell Constr., Inc. v. Hawkeye-Sec. Ins.*, 596 N.W.2d 67, 70 (Iowa 1999) (cleaned up). *But see Westlake Invs.*, 880 N.W.2d at 744 (holding that "defective workmanship by an insured's subcontractor may constitute an occurrence" under the standard commercial-general-liability policy terms). Yet Columbia did not make a similar argument in the district court. So it is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). And regardless, on this record, we could only say the damages here were necessarily found to be proximately caused by consumer fraud—not defective work.

Columbia again relies on *Yegge*, which interpreted the same language to hold that "[t]he subject of the" claims there "did not qualify as property damage within the policy's definition because they are intangible economic losses." *Yegge*, 534 N.W.2d at 102 (cleaned up). But remember, *Yegge* was decided by trial on stipulated facts. Here, Columbia seeks to decide the question at summary judgment with only the jury instructions, verdict form, and judgment entry as evidence as to whether the damages awarded were "because of" "[p]hysical injury to tangible property" or "loss of use of that property." And this limited evidence fails to meet Columbia's summary-judgment burden on this policy provision too. *See Interstate Power Co.*, 603 N.W.2d at 756.

All we can say as a matter of law is that the compensatory damages were proximately caused by consumer fraud. This, again, is a distinction from *Yegge*, where the conduct included breach of contract and breach of express and implied warranties making it unsurprising that the underlying evidence would likewise support a finding of only "intangible economic losses." *Yegge*, 534 N.W.2d at 102. And the verdict form here shows the jury awarded some damages for "[t]he reasonable cost of completing the home" and some for "[c]osts associated with temporary living, moving expenses, and loan extension." As those descriptions are not statutory terms, it is unclear without the underlying evidence of the consumer-fraud conduct and the Dostarts' losses what factual conclusions can be drawn about the cause of the damages. So on this record, we cannot say that none of the need to "complet[e] the home" may have been because of physical damage or that none of the living and moving expenses were from "loss of use" of damaged property. And thus, the district court properly denied summary judgment

on the ground that the consumer-fraud judgment was not "because of 'bodily injury' or 'property damage.'"[7]

* * *

Columbia may ultimately be proved correct that the consumer fraud here was not accidental, that it was committed "with the intent to cause a loss," or that it was not "because of 'bodily injury' or 'property damage.'" It might even succeed in doing so through summary judgment, if it presents evidence of the underlying conduct and the Dostarts then fail to meet their summary-judgment burden to dispute the material facts with their own evidence about the underlying conduct. But the verdict form, jury-instruction excerpts, and judgment entry from the unsatisfied consumer-fraud judgment submitted by Columbia here do not show that Columbia is entitled to judgment as a matter of law. And so, the district court correctly denied Columbia's motion for summary judgment.

**AFFIRMED**.

---

[7] Because Columbia failed to meet its burden to present evidence negating this policy provision, it matters not whether the Dostarts resisted with evidence showing the underlying property damage. *See Interstate Power Co.*, 603 N.W.2d at 756; *Am. Tel. & Tel. Co. v. Dubuque Commc'ns Corp.*, 231 N.W.2d 12, 14 (Iowa 1975) ("While failure to adequately resist a motion for summary judgment is a dangerous course for defendant[s] to take, it becomes fatal only if the summary judgment movant has met the burden of proof imposed upon it by rule [1.981]."). But the Dostarts *did* submit an expert report that they allege shows physical damage caused by the consumer fraud—further showing that a material fact dispute remains.