## Mark Donaher[1] *vs.* Peter S. Porcaro.

No. 97-P-442.

Worcester. February 4, 1999. - August 31, 1999.

Present: Warner, C.J., Kaplan, & Kass, JJ.

*Statute,* Construction. *Contract,* Cancellation, For services. *Massachusetts Home Solicitation Act.*

A District Court judge correctly concluded that a landscaping contract, initiated by the customer and signed after negotiation of terms, was not, in the circumstances, subject to the three-day "cooling off" provisions of G. L. c. 93, § 48, applicable to home solicitation sales [651-654]; and the judge correctly awarded damages to the landscaper on the basis of avoiding unjust enrichment to the extent of the work completed for the customer [654].

Civil action commenced in the Milford Division of the District Court Department on July 19, 1990.

The case was heard by *Thomas F. Fallon, J.*

The case was submitted on briefs.

*Andrej Thomas Starkis & R. Arlen Johnson* for the plaintiff.

*Peter Porcaro,* pro se.

Kass, J. Mark Donaher (landscaper) did not comply with G. L. c. 93, § 48, in that he failed to provide his customer, Peter Porcaro (customer), with written notice that the customer had three days in which to cancel a contract for landscaping services that the parties had entered into. The question presented is whether that statute, a "door to door sales act," applies to the transaction in question. A judge of the District Court, and, thereafter, the Appellate Division of the District Court, ruled that the statute did not apply, and that the landscaper, therefore, had not violated the statute and was entitled to recover from the customer for the services provided. We affirm.

1. *The facts.* We take our facts from the findings of the trial

---

[1]Mark Donaher does business as Topsoil Landscaping and Design.

judge, supplemented with uncontested material that appears in the record appendix and the opinion of the Appellate Division. The customer, who lived at 34 South Mill Street, Hopkinton, wanted some landscaping work done at that address. On the basis of an advertisement in the Yellow Pages telephone business directory, the customer called the landscaper, reaching an answering machine on which the customer left a message asking for a visit and an estimate. The landscaper returned the call and made an appointment to visit the customer's house, or, more to the point, his yard, at 7:45 A.M. the following day, February 6, 1990. At that appointment, the parties discussed the work the customer wanted done but did not conclude an agreement. Rather, the landscaper gave an unwritten estimate and said he would draw up a written contract. This he did in the form of a typewritten proposal on his business letterhead, with an acceptance block to be signed by the customer at the bottom of the page. The date of submission of that document was March 19, 1990. The customer made seven handwritten changes in the draft involving details of the work to be done within the quoted price of $10,079. Those changes the landscaper incorporated in a revised draft dated March 31, 1990, which he signed and then submitted to the customer.[2] With one more handwritten amendment, viz., "job to be completed by 5/15/90," the customer countersigned on April 3, 1990. The contract was signed by the customer at his residence.

Phase one of the work involved effecting changes in grade by moving material from the front and right side of the customer's house to the rear, as well as placing rocks in "the entrance landscape or other area[]s within the lot." That work the landscaper proceeded to undertake and, as far as the landscaper was concerned, completed in workmanlike manner. The customer, however, thought the landscaper had improperly disposed of debris in adjoining land (not, apparently, owned by the customer) and declined to pay the phase one progress bill. The landscaper suspended work and filed a contract action in the District Court on July 19, 1990.

2. *The statute.* Section 48 of c. 93 of the General Laws,

---

[2]That draft added a new provision of the landscaper's devising, relating to late contract payments and force majeure. Although the customer complains those provisions were slipped in and concealed, the judge found that they were not. The substance of those provisions has no bearing on the controversy. Neither party at this stage of the proceedings claims any rights under them.

inserted by St. 1970, c. 272, is representative of measures alternatively called "home solicitation" or "door to door sales" laws that have been promulgated by the Federal Trade Commission and many states. See 16 C.F.R. § 429 (1999), and, as sample state statutes, Conn. Gen. Stat. Ann. § 42-134a (West 1992); Mich. Comp. Laws § 445.111 (1989); Ohio Rev. Code Ann. §§ 1345.21-1345.28 (Banks-Baldwin 1994); Tex. Rev. Stat. Ann. §§ 5069-13.01 to 13.07 (West 1987). The purpose of this kind of statute is to protect consumers against being overborne by high pressure tactics of vendors making door to door pitches in places of residence. Door to door sales of aluminum siding, windows, floor covering, asphalt paving of driveways, furniture, television sets, master antennae, and satellite dishes come to mind as illustrative. The design of the statutes is to provide a cooling off period, after the buyer has signed on the dotted line, in which the buyer, when no longer subject to the hypnotic power of the pitchman in his home, may act on sober second thought about the wisdom of making the purchase or hiring the services on the terms agreed to. See Wilkins, The New Mass. Retail Installment Sales Act, 51 Mass. L.Q. 205, 229-230 (1966) (discussing analogous cooling off period in G. L. c. 255D, § 14, pertaining to installment sale contracts); Willier & Russell, Consumer Protection, Ann. Surv. Mass. L. § 9.5 (1970); Alperin & Chase, Consumer Rights and Remedies §§ 55-56 (1979 & Supp. 1998). So, for example, G. L. c. 93, § 48, the Massachusetts home solicitation act, gives the buyer on a home solicitation contract three business days to cancel, the three days to run from the time of signing the contract, *provided* that the contract gives express notice of the three-day cancellation right; otherwise the period does not begin to run until the seller *does* give notice of the three-day cancellation right. There is built into the statute a form of notice of cancellation. In many literal respects, the landscaping contract fits the criteria set out in § 48. It is an agreement for the "rendering of services . . . primarily for personal, family or household purposes in excess of twenty-five dollars in value . . . consummated by a party thereto at a place other than the address of the seller or lessor." G. L. c. 93, § 48, as appearing in St. 1970. c. 272.[3] Both the trial judge and the Appellate Division thought it decisive that the customer had initiated the

---

[3]Special consumer protection provisions governing home improvement contracts appear in G. L. c. 142A. Residential contracting as defined in G. L.

transaction, rather than the other way around. That was the basis for not applying home solicitation laws in *All Am. Pools, Inc.* v. *Lato*, 20 Conn. App. 625, 629 (1990); *Brown* v. *Jacob*, 439 Mich. 865 (1991) (adopting dissent reported at 183 Mich. App. 387, 392-395 [1990]); *Tambur's, Inc.* v. *Hiltner*, 55 Ohio App. 2d 90, 93 (1977); and *Langston* v. *Brewer*, 649 S.W.2d 827, 829 (Tex. Ct. App. 1983).

All those jurisdictions, however, had statutes that contained language providing some basis for exempting from their application a customer-initiated transaction. The Massachusetts law contains only a limited exception for customer-initiated transactions. It appears at § 48 K, inserted by St. 1981, c. 235, § 1, and grants an exemption to a transaction "in which the buyer has initiated the transaction and the goods or services are needed to meet a *bona fide* immediate personal emergency of the buyer." As § 48 is currently written, initiation of the transaction of the buyer, without more, does not appear to avoid that statute's strictures. This conjures up the unpleasant picture of a homeowner asking two teenagers to do a paint job during summer vacation, and, after the job is done, refusing to pay for it, waving § 48 at them, and telling them to pound sand. In view of the character, history, and purpose of the statute, having in mind the mischief to be corrected, we doubt that such a result is consistent with the legislative intent. We are, nevertheless, inhibited from rewriting the statute, even to avoid a result that is harsh or unjust. *Pierce* v. *Christmas Tree Shops, Inc.*, 429 Mass. 91, 93 (1999).

Fortunately, we need not do so in this case. What removes the case from the coverage of § 48 is that it bears no resemblance on its facts to the object of the home solicitation statute: a contract made on the doorstep or in the living room, under pressure from a fast-talking salesperson. Here, not only did the customer seek out the vendor, but there followed a course of negotiation and an exchange of drafts. The form of contract that the parties signed, as to all material business terms, was the one that the customer proffered to the landscaper, and which the landscaper retyped, signed, and returned to the customer. The course of dealing from first contact to final execu-

c. 142A, § 1, pertains to buildings and does not include landscaping work. Chapter 142A was added by St. 1991, c. 451, approved December 30, 1991. Since the contract in this case was made in 1990, c. 142A, in any event, would have no direct bearing on the outcome.

tion of a contract spanned eight weeks. In circumstances in which the buyer seeks out the seller, and there follows negotiation of the terms of the contract, with exchanges of drafts to which the buyer has made a contribution, we are of opinion that application of G. L. c. 93, § 48, would be inconsistent with "the cause of [the statute's] enactment, . . . the mischief to be remedied and the main object to be accomplished." *A. Belanger & Sons, Inc.* v. *Joseph M. Concannon Corp.*, 333 Mass. 22, 25 (1955), quoting from *Brown* v. *Robinson*, 275 Mass. 55, 57 (1931). See also *Commissioner of Corps. & Taxn.* v. *Dalton*, 304 Mass. 147, 150 (1939) ("A matter may be within the letter of a statute and not come within its spirit, if the matter is beyond the mischief intended to be reached"); *Kerins* v. *Lima*, 425 Mass. 108, 112 (1997).

The Appellate Division wrote that the trial judge had awarded damages on a quantum meruit basis. In fact, the trial judge had rejected that theory of recovery and granted damages on the basis of avoiding unjust enrichment. There is no dispute about the theory underlying the damages award, which in dollar terms equals the amount due under the contract for the stage of work the judge found had been completed.

*Order of Appellate Division*
*dismissing appeal affirmed.*