Pierce, J.
Prior to closing on the purchase of a new home in April, 2008, the plaintiffs, Rimma Vaks and her husband Steven Mangano (collectively, ‘Vaks”), decided to sell at auction most of the furnishings from their former home, which did not match the style of the home to which they were moving. Vaks contacted approximately five auction houses, including defendants Ryan Auction Company of Wilmington and its owner, Denise A Ryan (collectively, “Ryan”), and discussed with each the terms of a consignment agreement.
In a six-page contract dated March 9,2008 (the “agreement”), Vaks consigned to Ryan over 150 items, including furniture, paintings, rugs, and other home furnishings. The front of each page of the agreement lists the items being consigned and the following language: “R.A, Co. has the pleasure of accepting the above listed property subject to the terms of our conditions of acceptance, as shown on reverse. (OVER).” The back of each page of the agreement contains the “Conditions of Acceptance.” Those conditions include that Ryan would receive a commission; unless other-wise specified, that the property would be sold subject to a reserve determined by Ryan; that Ryan would be entitled to attorney’s fees, costs, and expenses if any action were brought arising out of the agreement; and that after thirty days, any unsold or unclaimed items would become the property of Ryan -without notice or payment. The commission was twenty-five (25%) percent, and a reserve appears to have been established with respect to two rugs, a dining room table, a mirror, and a sofa.
The items consigned by Vaks were auctioned by Ryan on six different days between March 19 and June 4, 2008. On April 28, 2008, Vaks received two checks from Ryan, one for the first and one for the second auction date. After the auction conducted on April 16, 2008, approximately seventy-five (75%) percent of the con *18 signed items were sold. At or about this time, a dispute arose regarding the commission percentage. As a result, Ryan agreed to reduce the commission to twenty (20%) percent. After the final auction date, only fourteen items remained unsold. Ryan made those items available for pickup by Vaks. When they were not picked up in thirty days, Ryan donated the items to charity. Vaks complained about the manner in which the auction was conducted and about the disposal of unsold property. On August 1,2008, Vaks sent Ryan a G.L. c. 93A demand letter.
In a complaint dated May 27, 2009, Vaks alleged that Ryan: 1) breached a verbal agreement; 2) breached a bailment contract; 3) breached a fiduciary duty; 4) converted Vaks’ personal property; 5) committed fraud; 6) breached G.L.c. 100, §9 by illegally using “cappers” and knowingly making and accepting false bids; 7) breached G.L.c. 93, §48, the so-called home solicitation law; 8) was unjustly enriched; and 9) violated G.L.c. 93A. On February 4, 2010, Vaks’ motion to amend the complaint was allowed. In addition to the counts set forth in the original complaint, Vaks’ revised first amended complaint (the “amended complaint”) alleged that terms of the agreement were not “conspicuous” as that term is defined in G.L.c. 106, §1-201; that Ryan violated G.L.c. 106, §7-202 relating to warehouse receipts and warehousemen; and that the agreement was “unconscionable” in violation of G.L.c. 106, §2-302 and against public policy. Vaks also amended the fraud count to include allegations of fraudulent inducement and material misrepresentation. The breach of fiduciary duty count was dropped from the amended complaint.
Discovery and motion practice ensued. Both parties moved for summary judgment, and a hearing on the cross motions was held March 11, 2010. In a ruling issued on March 29,2010 (the “March 29 order”), both summary judgment motions were denied. The case was then scheduled for mediation on September 21,2010, and for a jury trial on October 29,2010. Prior to the mediation, a trial court judge, different from the judge who issued the March 29 order, issued a second order regarding Ryan’s motion for summary judgment. That second order was dated September 8, 2010 (the “September 8 order”). Nothing in the appellate record suggests that an additional hearing was held prior to the issuance of the September 8 order.
In the September 8 order, the court reexamined most of the claims set forth in the amended complaint. The court found that the facts asserted by Vaks “do not constitute ‘fraud’ or [a] violation of M.G.L. ch 93A. Rather they are allegations of breach of contract.” The court further found insufficient evidence to support an alleged violation of G.L.c. 100, §9; that G.L.c. 93, §48 was not applicable to the facts alleged; that the terms of the agreement were “conspicuous”; and that the agreement “was neither procedurally or substantively unconscionable.” Vaks’ motion to reconsider and revised motion to reconsider the September 8 order were both denied.
The case was tried to a jury on December 13 and 14,2010. Before empanelling the jury, the trial judge advised the parties, based on the September 8 order, that the trial would proceed on the breach of contract and conversion counts only. Vaks objected, and the trial proceeded. On December 14, the jury returned a verdict for Ryan on both counts, and awarded attorney’s fees in the amount of $5,500.00. Vaks filed a notice of appeal on December 20,2010.
On appeal, Vaks alleges that it was error for the trial court to dispose of all but two of her claims prior to trial. Vaks asserts that she was not given notice and an oppor *19 tunity to be heard prior to the September 8 order; that the September 8 order did not address all of the allegations set forth in the amended complaint; that summary judgment should not have entered on any of her claims; that the court failed to give conclusive effect to her requests for admissions; and that her G.L.c. 93A demand letter should have been admitted as evidence at trial.
l.First, we consider whether it was error not to have conducted a second hearing prior to the issuance of the September 8 order. Ryan’s motion for summary judgment was filed December 10, 2009. An initial opposition was filed on January 25, 2010, followed by a supplemental opposition on February 25,2010, and a supplemental memorandum and cross motion for summary judgment on March 8, 2010. A hearing was held on March 11, 2010, prior to the issuance of the March 29 order. Nothing in the record suggests that there was any notice to the parties that summary judgment was being reconsidered and that the judge undertaking the reconsideration was not the same judge who heard the parties on March 11 and issued the March 29 order. While the applicable rules of procedure do not expressly require a hearing on motions for summary judgment, repeated references to such a hearing would suggest at least a strong preference that one be held. Rule 56(c) of the Mass. R. Civ. P. states: “The motion shall be served at least 10 days before the time fixed for a hearing. The adverse party prior to the day of hearing may serve opposing affidavits.” Rule 6(c) of the Mass. R. Civ. P. also refers to a hearing (“A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 7 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court.”), as does Rule 105 of the Dist./Mun. Cts. Supp. R. Civ. P. (“Motions and other interlocutory matters must be in writing and filed before being heard or placed on a list for hearing, unless otherwise ordered by the court.”), and indirectly, the first paragraph of § II of District Court Joint Standing Order 1-04 (“Discovery and pretrial motions, including motions pursuant to Mass. R. Civ. P., Rules 12, 15, 19, 20 and 56, and such other motions as may be prescribed by the court, shall be filed, marked and caused to be heard by such date unless the court permits otherwise for good cause shown.”). See also Rule 9A(c) (3) of the Rules of the Superior Court (“Presumptive Right to a Hearing. Requests for hearings on the following motions will ordinarily be allowed: ... Summary Judgment (Rule 56)....”).
In this case, the parties’ motions for summary judgment were denied after a hearing, and the case was scheduled for mediation and then trial. According to Vaks’ appellate submissions, it was not until they arrived at the mediation that they learned that a second order had been issued, by a second judge, in large part allowing summary judgment in Ryan’s favor. “At minimum, due process requires notice and an opportunity to be heard. Adequate notice is that which is reasonably calculated to inform the parties of proceedings which may directly and adversely affect their legally protected interests” (citations omitted). Ouellet v. Cummins, 1998 Mass. App. Div. 256, 258. The parties should have been informed that summary judgment was being reconsidered by a different judge. This would have given the parties an opportunity to request a further hearing and the court an opportunity to consider further argument, possibly even additional submissions. Notice and an opportunity to be heard are particularly important where, as here, summary judgment is allowed *20 and claims are removed from consideration at trial. Accordingly, we find that Vaks was entitled to notice and an opportunity to be heard prior to the September 8 order, and that it was error not to have conducted a second hearing.
2. Next we consider whether and to what extent Yaks was harmed by the failure of the court to hold a hearing before issuing the September 8 order. That question requires a two-part analysis. The first part is whether, on the record before us, without Vaks having an opportunity for a second hearing, the September 8 summary judgment order was erroneous as to any of Vaks’ claims. To the extent that summary judgment should have been denied on any claim, even on the record before us, no further hearing is required and that claim will be returned for trial. To the extent that the record before us suggests that summary judgment should be allowed, that count will be returned for further Mass. R. Civ. R, Rule 56, consideration after a hearing. The second part of the analysis involves a determination of the legal viability of the various claims advanced by Vaks. In this regard, we will determine whether Vaks’ claims are such that relief could be granted as a matter of law.
Count 1 alleges breach of a verbal agreement. In particular, Vaks alleges that Ryan made oral representations inconsistent with the terms of the agreement relating to the commission to be taken by Ryan, expenses, insurance, reserves, and final settlement of the account. All of the alleged inconsistencies occurred prior to execution of the written contract. Where the “writing appears to express the entire transaction or agreement entered into between the parties ..., [the parol evidence rule precludes] extrinsic evidence of prior or contemporaneous oral or written representations ... to vary, alter, or control the written agreement.” Davis v. Davis, 2007 Mass. App. Div. 123, 124 n.4, citing Spileos v. DiCenso, 1994 Mass. App. Div. 139, 140. Since Vaks freely and voluntarily entered into a written contract with Ryan, she is now precluded, as a matter of law, from attempting either to alter or amend its terms or to enforce an alleged prior or contemporaneous verbal agreement. See R.W. BISHOP, PRIMA FACIE CASE §2.86, at 178 (5th ed. 2005). Accordingly, no further proceedings are required on this count.
Count 2 alleges “Breach of Bailment.” Vaks contends that it was error for this count to have been tried as a breach of contract claim, without reference to a “bailment.” The agreement refers not to a “bailment,” but rather to a “consignment.” While consignment and bailment are related concepts, differences do exist. A consignor entrusts goods to the consignee for sale. Ordinarily, a bailee is responsible for redelivering the goods to the bailor. See King v. Trustees of Boston Univ., 420 Mass. 52, 59 (1995). With a bailment, after passage of the date set for return of the property, the burden shifts to the bailee to show his own due care, thus giving the bailor the benefit of a presumption of negligence. See Knowles v. Gilchrist Co., 362 Mass. 642, 652 (1972). Here, the terms of the agreement were clear: “After 30 days of the sale date, all unsold and unclaimed items become the property of [Ryan] without notice or payment.” Ryan was not obligated to return unsold items to Vaks. Where terms of the consignment were set forth in the agreement, including the commission, reserves, withdrawal of property, and final settlement of the account, it was not error for this count to be tried as a breach of contract claim, without reference to either bailment or consignment. Because a *21 jury has already considered a breach of contract claim, Yaks is not entitled to any further proceedings regarding count 2.
Count 3 alleges that the agreement does not contain a “conspicuous” reference to the “conditions of acceptance.” In its September 8 order, the trial court found that references to the conditions of acceptance on the front of each page of the contract, followed by the word “(OVER),” capitalized and in bold type, were “conspicuous” as that term is defined in G.Lc. 106, §1-201, “and would alert a reasonable person to the ‘Conditions of Acceptance’ on the back of the form.” While we agree with the trial court based on the record before us, we are required to return this count to the trial court to afford Vaks a further opportunity to demonstrate a genuine issue of material fact.
Count 4 alleges that Ryan acted as a “warehouseman,” and failed to comply with the requirements of G.Lc. 106, §7-202. The written agreement of the parties expressly provides that Ryan took Vaks’ property on consignment. Ryan was not acting as a “warehouseman” and, therefore, §7-202 is not applicable as a matter of law. No further proceedings are required on this count.
Counts 5 and 6 of the amended complaint allege that terms of the agreement were “unconscionable” and unenforceable. Paragraph (1) of G.Lc. 106, §2-302 provides: “If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause ... as to avoid any unconscionable result.” “The issue is one of law for the court, and the test is to be made as of the time the contract was made.” Waters v. Min LTD, 412 Mass. 64 (1992), citing Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 291 (1980). In its September 8 order, the trial court determined that “[t]he contract between the parties was neither procedurally nor substantively unconscionable.” That conclusion was not erroneous, and counts 5 and 6 were properly removed from consideration at trial. No further proceedings are required regarding these claims.[3]
As to count 7 alleging conversion, summary judgment was denied. Since the claim has already been considered by a jury, no further proceedings are required.
Count 8 of the amended complaint alleges fraud. The trial court determined that while the use of “cappers or people submitting false bids to affect the amount actually bid ... would arguabl [y] be fraud,” Vaks “has not presented any evidence of that claim and is therefore precluded from submitting such evidence at trial.” We disagree.
In describing the auction process, Vaks’ affidavit in opposition to the motion for summary judgment states:
*22 When I saw the first reserve price item was sold at less than 50% of my reserve price I asked [Ryan’s] husband why she sold it below reserve price. He told me not to worry since ‘our people’ bought it and it’s leaving the warehouse. Then I noticed who those people were. There were a couple of tables in the back of the warehouse with people who made those bids for Ryan. Since I sat very close to them I even saw the list of items they were bidding on those tables. After the auction regular customers left, I stayed to talk to Ryan and these people stayed too. Her family went to the back and they all ate together. None of the reserve price items were sold, she never announced reserve price auction, but all of these items stayed as her husband promised in the warehouse.
Considering the summary judgment submissions “with an indulgence in the opposing party’s favor,” Conley v. Massachusetts Bay Transp. Auth., 405 Mass. 168, 173 (1989), quoting National Ass’n of Gov’t Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), we find that even without a further opportunity to be heard, Yaks did create issues of fact as to whether Ryan made or accepted false bids. It was error for the trial court to have granted summary judgment and, therefore, count 8 is returned for trial.
Count 9 of the amended complaint alleges a violation of G.L.c. 100, §9 relating to the alleged use of “cappers” and the acceptance of false bids during the auction process. In relevant part, § 9(f) prohibits the use of a “capper” or “bidder” for the purpose of “bidding up the price of any goods in competition with bona fide bidders or for the purpose of encouraging or enticing bona fide bidders to purchase, or for the purpose of stimulating competitive bidding or sales.” Pursuant to G.L.c. 100, §12, any person who violates G.L.c. 100 “may be fined not more than one thousand dollars or [punished] by imprisonment for not more than six months, or both.” Penal statutes such as this have been construed as creating a private cause of action only if “that appears by express terms or by clear implication to have been the legislative intent.” Perkins v. Commonwealth, 52 Mass. App. Ct. 175, 181 (2001), quoting Mezullo v. Maletz, 331 Mass. 233, 238 (1954). No such intent is evident within this statute. Accordingly, we find that Yaks did not have a private cause of action. Recourse for an individual alleged to be injured by a violation of G.L.c. 100, §9 may be available only through G.Lc. 93A.
Count 10 of the amended complaint alleges a violation of G.L.c. 93, §48. That section imposes requirements where certain agreements for the sale or lease of goods, or the rendering of services, are consummated at a place other than the seller’s place of business. In the September 8 order, the trial court found that the statute was “not applicable.” We agree. The undisputed facts are that Vaks contacted Ryan and that Ryan came to Vaks’ home at Vaks’ invitation to view the property to be auctioned. A negotiation ensued and eventually the parties entered into a written agreement. The law was intended to protect unwary consumers from unwelcome solicitors. See Donaher v. Porcaro, 47 Mass. App. Ct. 650, 652 (1999). Under the circumstances, Vaks was not entitled to the protection of G.L.c. 93, §48, and no further proceedings are required as to count 10.
Count 11 alleges unjust enrichment in connection with Ryan’s allegedly unlawful retention of Vaks’ property. This claim does not state a separate cause of action, but *23 rather a theory of recovery. See Lopes v. Commonwealth, 442 Mass. 170, 179 (2004). The damages sought are the same as those alleged in the conversion claim. There was no error in removing this count from the jury trial, and no further proceedings are required.
Count 12 of the amended complaint alleges violations of G.L.c. 93A In the September 8 order, the trial court found that the fraudulent representations alleged by Vaks did not constitute a violation of G.L.c. 93A As described more fully above, Vaks’ submissions in opposition to Ryan’s summary judgment motion do create issues of fact as to whether fraud occurred during the auction process. As the trial court acknowledged in its September 8 order, the use of “cappers or people submitting false bids” “would arguabl[y]” constitute fraud and, therefore, a violation of G.L.c. 93A Since we find facts in dispute as to those allegations, we also find that those facts, if established, could constitute a violation of G.L.c. 93A Accordingly, even on the record before us, it was error to grant summary judgment on the G.L.c. 93A claim in count 12, and that count is returned for trial.[4]
3. Finally, we consider Vaks’ claim that the trial court erroneously failed to give conclusive effect to her responses to requests for admissions. The requests were served on November 4 or 5,2009.[5] According to Ryan, there were “numerous delays and continuances.” Then, as part of the March 29 order denying summary judgment, the trial court entered an order that “[t]he parties’ discovery obligations are to commence on April 16,2010 and henceforward should comply with the Mass. R. Civ. P. [tjime restraints.” Ryan contends that she responded to the requests for admissions in accordance with the discovery order.
Rule 36 of the Mass. R. Civ. P. provides that a party requesting admissions “may move to determine the sufficiency of the answers or objections.” No such motion was filed in this case. The trial court’s March 29 order specifically instructed the parties that “[a]ny discovery disagreements are to be addressed to my attention, with a full description of the dispute, and I will determine whether a hearing, any action, or any sanction is necessary.” Despite that order, Vaks did not bring any issue relating to the requests for admissions to the attention of the trial court during the discovery process. Where responses were served, outside the time provided by Rule 36 but consistent with the court’s discovery order, and no motion was filed challenging the sufficiency of those responses, the judge properly declined to deem the requests admitted.
To summarize, we return count 3 to the Lynn District Court for further consideration of Ryan’s motion for summary judgment on that count, after notice and an opportunity to be heard. Counts 8 and 12 are returned for trial.
So ordered.

 Paragraph 9 of the agreement provides: “Should any action be brought arising out of this agreement... [Ryan] shall be entitled to reasonable attorney’s fees costs and expenses....” We note that this provision does not condition recovery of such fees, costs, and expenses on who initiates the action or on its outcome. The enforceability of paragraph 9 has not been raised on appeal, and we leave that issue to the sound discretion of the trial court should it arise in subsequent proceedings.

 Vaks further alleges that it was error for the trial court not to have admitted her G.L.c. 93A demand letter into evidence at trial. That issue is returned with the G.L.c. 93A count for further consideration by the court at the time of trial.

 An unexecuted copy of the requests is included in the record appendix.