# IN THE SUPREME COURT OF IOWA

No. 17–1466

Filed February 22, 2019

**TODD MORRIS,**

    Appellant,

vs.

**STEFFES GROUP, INC.,**

    Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marion County, Martha L. Mertz, Judge.

Plaintiff seeks further review of a decision affirming an adverse summary judgment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Billy J. Mallory and Allison M. Steuterman of Brick Gentry, P.C., West Des Moines, for appellant.

Collin M. Davison of Heiny, McManigal, Duffy, Stambaugh & Anderson, P.L.C., Mason City, for appellee.

**APPEL, Justice.**

In this case, we consider whether the district court correctly held that a seller of auction services of certain machinery is entitled to summary judgment on a claim brought by a buyer of those services under the Iowa Door-to-Door Sales Act (DDSA), Iowa Code chapter 555A (2017). In addition, we must consider whether the district court erred in dismissing without prejudice a declaratory action count of the petition challenging, among other things, the underlying sales contract because of an invalid execution by a third party and because of fraud in the inducement.

After the district court dismissed both claims, the buyer appealed. We transferred the case to the court of appeals. The court of appeals affirmed the district court.

We granted further review. For the reasons expressed below, we vacate the decision of the court of appeals. We reverse the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.

**I. Factual and Procedural Background.**

**A. Factual Background.** Because this case involves an appeal of a district court order granting a motion for summary judgment, we review the facts in the light most favorable to the nonmoving party. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). The nonmoving party offered evidence that showed that Todd Morris attended an agricultural trade show with his wife, Lacey Morris.[1] While at the trade show, they visited a friend's booth. Steffes Group, Inc., which provides services that include farm equipment auctions and appraisals, had a booth next to the friend's booth.

---

[1]To avoid confusion, in this opinion Todd Morris will be referred to as Morris, while his wife will be referred to as Lacey.

While Lacey was talking to her friend, Morris spoke with Duane Norton, a Steffes Group representative. Morris owned some equipment, including a tractor, which he claimed he used for playing around his farm, hunting purposes, food plots, and maintaining his house and property. Morris and Norton discussed the possibility of auctioning some of Morris's equipment. Norton told Morris there was an upcoming auction suitable for Morris's equipment, but they would have to act quickly to get his equipment into the auction. Morris left his contact information with Norton.

Shortly thereafter, Norton called Morris to find out when he could come to the Morris residence to view the equipment. Morris explained that he would be out of town. Norton responded that he only needed to see the equipment. Morris did not object to Norton visiting his residence to view the equipment while he was absent but informed Norton that any of the business associated with the equipment should be with himself and not his wife. Morris then gave Norton Lacey's cell phone number. Norton and Lacey arranged a time for Norton to come to the Morris residence.

When Norton arrived at the residence, Lacey took Norton to the garage to view the equipment. Norton jotted down some notes about the equipment and associated identification numbers. Afterwards, Norton and Lacey went into the residence and sat in the kitchen, where Norton began filling out a document. Norton listed on the document the various pieces of equipment that Lacey had shown him and asked her to sign the document.

At some point while they were in the kitchen, Lacey and Norton each spoke with Morris by telephone. According to Morris and Lacey, Norton told each of them that the document was merely a nonbinding "asset list" to get the equipment into the auction. Norton also reiterated the necessity

of moving quickly before the auction. During his telephone conversation with Norton, Morris told Norton there was a lien on one of the pieces of equipment—a tractor—and he was unwilling to part with the tractor for less than a certain amount. Since Morris had been unable to get in touch with his banker, they agreed to identify this amount later. Morris told Lacey that she could sign the document in his name, and she did so.

In fact, however, the document was a consignment contract. The contract provided that Morris employed Steffes Group to sell the identified equipment at auction and that the equipment "may not be sold or withdrawn prior to the auction except by mutual agreement." Under the contract, all property was to be sold for cash to the highest bidder. The contract does not state that Morris could cancel the contract and Norton did not provide a notice of cancellation form. Norton also did not tell Morris or Lacey that they could cancel the contract. The equipment to be sold pursuant to the contract included a tractor, a rototiller, a mower, a fertilizer spreader, a planter, and various other equipment.

Over the next few weeks before the auction, Morris and Norton communicated several times. At one point, Morris text messaged Norton asking if he would be able to approve or deny the sale price during the auction. Norton responded by text message that they could protect the sale price by putting a reserve on the tractor ahead of time. The two then spoke by phone. Norton explained Steffes Group's reserve process to Morris, informing him that Steffes Group would watch the bidding and if the reserve was not going to be met then Steffes Group would bid the reserve and return the tractor to Morris. With that understanding, Morris asked Norton to put a reserve on the tractor for $20,000. Subsequently, on the day before the auction, the parties again confirmed that the reserve on the tractor was $20,000.

At the auction, the tractor sold for $14,500. Lacey attended the auction. The tractor's sale price concerned her because it was less than the reserve amount. She phoned Morris, who was at a job site. Morris told her not to worry because Norton had assured him that if the tractor was not going to sell for at least $20,000 it would be pulled from the auction and returned to Morris.

Morris phoned Norton numerous times later that day but was unable to get in touch with him. The next day, Morris went to the auction site to get his tractor. The tractor was gone. Morris found a field hand at the site and, using the field hand's phone, was able to get in touch with Norton. Norton told Morris that he would "make this right" and offered to reduce the commission from some of the other items that sold. Morris refused as these amounts would be significantly less than the difference between the tractor's reserve and the sale price. Morris demanded the return of the tractor, and Norton told him that he would not get it.

**B. District Court Proceedings.** Morris filed a two-count petition in the Marion County District Court. In count I, Morris claimed a violation of the DDSA. Morris alleged that a Steffes Group sales representative personally solicited the transaction at his personal residence; that the sales representative did not furnish the plaintiff with a notice of cancellation as required by Iowa Code section 555A.3; that the sales representative did not inform him in any manner of the right to cancel or perform the other duties of a seller under Iowa Code section 554A.4; that he had provided notice of cancellation of the transaction on multiple occasions; and that he had demanded, to no avail, the return of his property and any payments made under the transaction. Morris alleged that a violation of the DDSA is also a violation of the Iowa Consumer

Frauds Act, under Iowa Code chapter 714. Morris sought injunctive relief, compensatory damages, interest, and attorney fees.

In count II, Morris sought a declaratory judgment concerning the parties' rights. In addition to the facts alleged under count I, Morris alleged that he did not execute the written agreement and that the written agreement was induced by fraud. He further asserted that he sent a notice of cancellation to the defendant but that the defendant refused to cancel the transaction or take other action as a result of the cancellation. Morris asserted that a controversy existed between the parties regarding their rights and sought a declaration that the alleged agreement was void, that he provided a valid cancellation of the contract, and that he rightly cancelled the transaction. Although styled as seeking a declaratory judgment, Morris sought various other remedies under count II, including the return of all property and a judgment for compensatory damages, interest, costs, and attorney fees.

In its answer to count I, Steffes Group denied all of Morris's allegations claiming that the transaction was subject to the DDSA and its various cancellation and notice provisions. Steffes Group specifically denied that its sales representative personally solicited the transaction at Morris's residence.

In its answer to count II, Steffes Group incorporated its denials with respect to the DDSA. Steffes Group also denied allegations that the execution of the written contract was invalid and that the written contract was induced by fraud.

After a round of discovery, Morris moved for summary judgment, asserting that the transaction was covered by the DDSA and there was no genuine issue of material fact that the defendant failed to comply with the notice and cancellation provisions the DDSA. In response, Steffes Group

resisted and filed its own motion for summary judgment, claiming that on the undisputed facts it was entitled to judgment as a matter of law.

In a brief order, the district court granted summary judgment in favor of Steffes Group. The district court stated that the "fighting issue" before the court was whether the DDSA applies to the facts of the case. The district court determined that the DDSA "does not apply to a contract for auction services, such as here." Based on that conclusion, the district court dismissed Morris's petition "without prejudice as to other theories of liability" and taxed costs to the plaintiff. Although not explicitly stated, the "other theories of liability" apparently referred to the non-DDSA claims in count II of the petition.

Morris appealed. We transferred the case to the court of appeals, which affirmed the district court. The court of appeals held that the DDSA does not apply to these facts and Steffes Group did not conduct a door-to-door sale of consumer goods or services. Citing *Windus v. Great Plains Gas*, 254 Iowa 114, 124, 116 N.W.2d 410, 415 (1962), the court of appeals also held that the district court did not err in dismissing count II of the petition without prejudice.

Morris filed an application for further review. We granted the application. For the reasons stated below, we now vacate the court of appeals and reverse the district court.

**II. Standard of Review.**

We review summary judgments for correction of errors at law. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). In ruling on a motion for summary judgment, the court must look at the facts in a light most favorable to the nonmoving party. *Crippen*, 618 N.W.2d at 565.

Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3); *see Banwart*, 910 N.W.2d at 544. A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved. *Banwart*, 910 N.W.2d at 544. "A fact is material when it might affect the outcome of a lawsuit." *Id.*

"Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Id.* at 544–45 (quoting *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005)). The court must consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record. *Crippen*, 618 N.W.2d at 565. "An inference is legitimate if it is 'rational, reasonable, and otherwise permissible under the governing substantive law.'" *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 71 (Iowa 2004) (quoting *McIlravy v. N. River Ins.*, 653 N.W.2d 323, 328 (Iowa 2002)). "[C]ircumstantial evidence is equally probative as direct evidence." *Banwart*, 910 N.W.2d at 545.

The burden of showing undisputed facts entitling the moving party to summary judgment rests with the moving party. *Swainston v. Am. Family Mut. Ins.*, 774 N.W.2d 478, 481 (Iowa 2009). The burden of proof remains with the moving party at all times. *See Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999). A moving party cannot shift the burden to the other party through a conclusory motion for summary judgment not supported by undisputed facts. *See id.*; *Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 900 (Iowa 1980); *Am. Tel. & Tel. Co. v. Dubuque Commc'ns Corp.*, 231 N.W.2d 12, 14–15 (Iowa 1975).

**III. Discussion.**

**A. Overview of Door-to-Door Sales Act.** The DDSA is contained in Iowa Code chapter 555A. The Act generally applies to a "seller" who engages in a "door-to-door sale" of "consumer goods or services." Iowa Code § 555A.1(3)(*a*). If a transaction is within the scope of the DDSA, the purchaser is entitled to notice and cancellation rights. *See id.* §§ 555A.2–.4. If a contract subject to the DDSA is rescinded or the seller fails to provide the buyer with a copy of the contract containing certain statutorily required terms, the contract is void. *Id.* § 555A.5. A violation of the DDSA is also a violation of the Iowa Consumer Fraud Act, Iowa Code section 714.16(2)(*a*). *Id.* § 555A.6(2). Finally, any seller who violates the provisions of the statute is guilty of a simple misdemeanor. *Id.* § 555A.6(1).

The DDSA contains several definitions. A "seller" is defined as "any person engaged in the door-to-door sale of consumer goods or services." *Id.* § 555A.1(6). The scope of the term "seller" depends upon the meaning of two other concepts, namely door-to-door sale and consumer goods or services.

The DDSA contains a definition of "door-to-door sale." Under the DDSA, a door-to-door sale is

> a sale, lease, or rental of consumer goods or services . . . in which the seller or the seller's representative *personally solicits* the sale, including those in response to or following an invitation by the buyer, and the *buyer's agreement or offer to purchase is made at a place other than the place of business of the seller.*

*Id.* § 555A.1(3)(*a*) (emphasis added).

The DDSA also contains a definition of "consumer goods or services." Under the DDSA, consumer goods or services are "goods or services *purchased,* leased, or rented *primarily for personal, family, or household purposes.*" *Id.* § 555A.1(2) (emphasis added).

**B.  Positions of the Parties.**  Morris argues that the district court erred in granting judgment on his claim under the DDSA and erred in dismissing the entirety of his petition.  Morris suggests that the statutory requirement that the transaction involve consumer goods or services is satisfied because although the items at issue can be considered agricultural equipment he used them primarily for personal, family, or household purposes.  He emphasizes that he used the equipment for playing around his farm, hunting purposes, food plots, and maintaining his house and property.  He also contends that Norton personally solicited consignment services and the sale of his equipment in the kitchen of his residence.  Finally, he asserts there is no genuine issue of material fact that the DDSA was breached.  As such, despite the title of chapter 555A, Morris argues that the transaction and Steffes Group's conduct falls within its provisions and that the district court erred in concluding otherwise.

In addition, Morris contends the district court erred in dismissing the entirety of his petition.  He argues Steffes Group had not moved for summary judgment on his declaratory judgment claim and the district court did not find this claim was unsustainable under any set of facts provable under the petition.

Steffes Group responds that the determinative question is whether the goods or services it sold to Morris were "consumer" in nature.  The only facts material to that analysis, Steffes Group continues, are the location of the sale of goods or services by Steffes Group to Morris and the nature of the products or services to be sold.  Thus, Steffes Group asserts that this case does not depend upon the circumstances surrounding the execution of the contract between the parties and whether a reserve was placed upon the tractor.  In addition, Steffes Group contends that Morris's use of the equipment is irrelevant.  Rather, according to Steffes Group,

answering the determinative question requires a focus on what was to be sold by Steffes Group.

Steffes Group thus claims that it is entitled to summary judgment because none of its services sold to Morris were consumer in nature. It emphasizes that it is in the business of selling agriculture-related services. This is evidenced, Steffes Group says, by the fact that the parties initially met at the farming trade show.

As to Morris's argument that his petition should not have been dismissed in its entirety, Steffes Group contends the claim is one of equity and the trial court did not err in exercising its equitable powers in dismissing the entire petition without prejudice.

**C. Discussion.**

1. *Personally Solicits.* In order to fall within the scope of the DDSA, a transaction must be one where the seller "personally solicits" "a sale, lease, or rental of consumer goods or services," and "the buyer's agreement or offer to purchase is made at a place other than the place of business of the seller." Iowa Code § 555A.1(3)(*a*). In his papers filed before the district court and in his brief on appeal, Morris maintains that the solicitation requirement was met when Norton presented the written consignment contract to his wife in their home and obtained her signature on it. The district court did not expressly rule on the solicitation question, but instead determined that the Act did not apply "to a contract for auction services, such as here."

In its appellate briefing, Steffes Group does not rely upon the solicitation requirement to uphold the district court order granting summary judgment on Morris's DDSA claim. Before the district court, Steffes Group argued that its representative did not solicit the sale on the grounds that Morris approached its representative at the trade show and

that Morris requested the representative visit the Morris residence. Steffes Group abandoned these arguments in its appellate brief, declaring that "[t]he answer to the question of whether Iowa Code Chapter 555A applies does not depend upon the circumstances surrounding the execution of a contract between the parties." Moreover, while Steffes Group notes that the facts material to the court's analysis relate to the "location of the sale of goods or services by Steffes to the Appellant," no argument is presented that Steffes Group's representative did not solicit the sale or that the buyer's agreement or offer to purchase did not occur at a place "other than the place of business of the seller" as required by the DDSA. Iowa Code § 555A.1(3)(*a*).

In several cases, we have held under similar circumstances that the appellee waives the unbriefed issues. *See State v. Seering*, 701 N.W.2d 655, 61–62 (Iowa 2005) (holding that appellee waived issues on appeal even though issues were raised in and decided by district court because appellee failed to present arguments in appellate brief); *Parkhurst v. White*, 254 Iowa 477, 481, 118 N.W.2d 47, 49 (1962) (holding that appellee waived issue not argued on appeal); *Am. Mut. Liab. Ins. v. State Auto. Ins.*, 246 Iowa 1294, 1302–03, 72 N.W.2d 88, 93 (1955) (declining to express opinion on issue not raised by appellees).

A notable case to the contrary is *King v. State*, 818 N.W.2d 1 (Iowa 2012). In *King*, the district court dismissed the plaintiff's petition on the ground that the questions posed were nonjusticeable political questions. *Id.* at 8. On appeal, the state as appellee only defended the dismissal on the ground of nonjusticeability. *Id.* at 11. It did not defend on alternative constitutional grounds that were presented to the district court but decided adversely to the state. *Id.*

On appeal, the *King* court considered constitutional arguments not raised by the state on appeal. *See id.* at 11–12. In doing so, the *King* court noted that the constitutional issues were extensively briefed below. *Id.* The *King* court further noted that the district court had already ruled adversely to the state on the constitutional issues. *Id.* As a result, a remand to the district court to consider issues it had already decided seemed pointless. *See id.* In light of the posture, the *King* court elected to consider the constitutional issues not raised in the appellee's brief. *See id.* The *King* court characterized the appellate waiver issue as one involving the discretion of the court. *Id.*

Unlike *King,* the parties' briefing below on the issue is minimal. Further, the district court did not rule on the solicitation issue. On the strength of our precedent, and upon the factors that distinguish the case from *King*, we consider the solicitation issue waived.[2]

2. *Consumer goods or services.* The parties do not dispute that Norton, as a representative of Steffes Group, did not give cancellation information to Morris or Lacey that would be required if the DDSA applies

---

[2]In any case, under the DDSA, the fact that a purchaser initiated conversations about a potential transaction does not necessarily take it outside the scope of the statute. The legislature expressly provided that door-to-door sales include situations where "the seller or the seller's representative personally solicits the sale, including those in response to or following an invitation by the buyer." Iowa Code § 555A.1(3)(*a*); *see also Weatherall Aluminum Prods. Co. v. Scott*, 139 Cal. Rptr. 329, 331 (Ct. App. 1977) ("[T]he phrase 'home solicitation' in the statute focuses not on who initiated the contact between buyer and seller, but on where the contract was made."); *Hollywood Decorators, Inc. v. Lancet*, 461 N.Y.S.2d 955, 956 (Sup. Ct. 1983) (holding that a transaction came within state door-to-door sales act where homeowner called interior decorator in response to advertisement but principal met with homeowners at their residence and executed contract at that location).

Further, it makes no difference whether a solicitation occurs at a residence or another location so long as "the buyer's agreement or offer to purchase is made at a place other than the place of business of the seller." Iowa Code § 555A.1(3)(*a*). In its statement of undisputed facts in support of its motion for summary judgment, Steffes Group did not assert that the trade show where representatives of the Steffes Group originally made contact with Morris was "the place of business of the seller."

to the transaction. Similarly, the parties do not dispute that the consignment contract fails to state that Morris could cancel the transaction at any time within three business days, as required for contracts within the ambit of the DDSA. Instead, the dispute before us centers on whether the DDSA applies to the goods or services involved in the parties' transaction.

Clearly, the application of the statute depends upon the primary purpose of the goods or services sold. But from whose perspective is the purpose of the goods or services determined? Steffes Group argues that the question of primary purpose should be determined from the perspective of the seller. In its affidavits in support of summary judgment, Steffes Group asserts that it is in the business of auctioning agricultural equipment, not consumer goods.

Morris asserts, however, that under the DDSA, the primary purpose of the transaction should be determined from the perspective of the buyer. Morris notes that the equipment he wanted to sell was used *by him* primarily for personal use and not for business purposes. As a result, he argues that the transaction is within the scope of the DDSA.

In order to answer the question, we begin with the language of the DDSA. For starters, it is important to note that the DDSA does not utilize a categorical approach to the term "consumer goods or services." *See* Iowa Code § 555A.1(2). The DDSA does not provide a laundry list of inclusion or exclusion. *See id.* Instead, consumer goods or services are defined as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes." *Id.*

As a result, a transaction involving goods or services is not drawn within the statute because of the objective quality or nature of the goods or services. There is no objective limitation on the term "goods or services"

outside their purpose or use. Goods may be big or small, durable or perishable, and expensive or cheap. Likewise, services may be short-term or long-term, extensive or minimal, and involve sophisticated expertise or none at all. Nothing in the statute categorically declares any goods or services outside the scope of the statute based on their inherent quality. Instead, the legislature utilized an approach based not on the objective nature of the goods or services but solely upon the primary purpose of the goods or services involved in the transaction. *See id.*

Since the important determinant under the DDSA is primary purpose, the next question is how one goes about determining the purpose of a transaction involving goods or services. We note that the legislature used the phrase "goods or services *purchased*" for personal use, not "goods or services *sold*" for personal use. *Id.* (emphasis added). Ordinarily, of course, it is the buyer that purchases the goods or services. By using the term "purchased" in the definition of consumer goods or services covered by the Act, the legislature intended the focus of the DDSA to be on the intended use of the goods or services by the *buyer*, not the seller.

This approach to interpreting the statute makes sense. The limitation of door-to-door sales protection to broadly defined consumer goods or services transactions reflects an intent to exclude transactions motivated by business purposes. *See* Byron D. Sher, *The "Cooling-Off" Period in Door-to-Door Sales*, 15 UCLA L. Rev. 717, 754–56 (1968). The exclusion of such transactions is based on the assumption that those motivated by business purposes would be better able to protect themselves against high-pressure sales tactics than other purchasers. *See id.* With respect to nonbusiness purchases of goods or services, the statutory protections of the DDSA are available.

There is no authority in Iowa dealing with the scope of the DDSA definition of "consumer goods or services." There are, however, nonbinding cases from other jurisdictions that illuminate the question. For example, in one unreported case, a company that ordinarily sells telephone systems to businesses came within the ambit of a local door-to-door sales act when it made a sale to a residential customer for use in his home, even though the salesperson and buyer began their relationship when the salesperson asked the buyer at his place of business whether he would like the telephone system for his business. *N.E. Leasing Servs., Inc. v. Barbieri*, No. 27 64 80, 1990 WL 289535, at *1–3 (Conn. Super. Ct. May 7, 1990). In this case, the focus of the inquiry regarding the purpose of the transaction was based upon the perspective of the buyer, not the seller. *See id.*

Another instructive case is *Sanford v. National Association for the Self-Employed, Inc.*, 640 F. Supp. 2d 82, 89–91 (D. Me. 2009). In *Sanford*, the plaintiff claimed that the purchase of a membership in an association for self-employed business people amounted to a purchase "primarily for personal, family, or household purposes" under two Maine consumer protection statutes. *Id.* at 89–90. The district court rejected the claim related to the purchase of membership in the association, noting that plaintiffs failed to present a factual basis to infer that the memberships were personal in nature. *Id.* at 90. Yet, the district court found that the purchase of discount pharmacy cards pursuant to that membership was primarily related to required statutory purposes because it could be reasonably inferred that the plaintiffs, each of whom has a wife and minor children, purchased the cards primarily for the "personal, family, or household purposes." *Id.* at 90–91. The clear focus in *Sanford* is primary use of the goods or services from the perspective of the buyer. *See id.*

There is a line of cases from other states involving home improvement goods and services that offers insight into the problem of primary purpose under the DDSA.  This line of cases teaches that goods and services as diverse as landscaping services and swimming pools can be primarily for "personal, family, or household purpose" under local door-to-door sales provisions.  *Donaher v. Porcaro*, 715 N.E.2d 464, 466–67 (Mass. App. Ct. 1999) (landscaping services); *Donnelly v. Mustang Pools, Inc.*, 374 N.Y.S.2d 967, 970 (Sup. Ct. 1975) (swimming pool).

It is not unusual for the application of a consumer statute to depend upon the nature of a buyer's use of goods or services.  Under the Federal Truth in Lending Act (TILA), a consumer credit transaction is one in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  *See* 15 U.S.C. § 1602(i) (2012).  In considering the question of statutory coverage of a particular transaction, the focus in TILA cases is not on the business of the lending institution, or the views of the lender, but on the borrower's purpose in obtaining the loan.  *St. Hill v. Tribeca Lending Corp.*, 403 F. App'x 717, 720–21 (3d Cir. 2010) (finding that primary purpose of loan was for business even though part of the loan amounts were used for personal purposes); *Gombosi v. Carteret Mortg. Corp.*, 894 F. Supp. 176, 180–81 (E.D. Pa. 1995) (same).

We note, unlike other statutes, our DDSA does not exclude certain kinds of agricultural goods or services from the statute.  This contrasts sharply with other states' door-to-door or consumer statutes in existence at the time our statute came into force, as some such statutes expressly excluded sales of farm equipment.  *See* Beaufort J.B. Clarke, Comment, *Home Solicitation Sales—The Legislative Response to a "Cooling-Off" Period*, 24 S.C. L. Rev. 880, 887, 892 (1972) (noting exclusions in Maryland and

Virginia); *see also Munk v. Fed. Land Bank of Wichita*, 791 F.2d 130, 131–32 (10th Cir. 1986) (per curiam) (citing 15 U.S.C. § 1603(5) (Supp. IV 1974)) (observing that the Federal TILA expressly exempted certain transactions primarily for agricultural purposes from those that are primarily for personal, family, or household purposes).  When the sale of a particular type of goods or services is not explicitly excluded from the scope of a consumer statute like the DDSA, a transaction involving goods or services is within the scope of the statute provided other statutory requisites are met.  *See, e.g.*, *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman*, 613 N.E.2d 1083, 1086–87 (Ohio Ct. App. 1992) (noting home improvement products are not excluded from the statutory definition of "consumer goods or services").

Under the above analysis, it is clear that the district court erred when it granted Steffes Group summary judgment on the DDSA claim.  In its motion for summary judgment, Steffes Group made no claim and presented no evidence that Morris's purpose in purchasing the auction services was not "primarily for personal, family, or household purposes."  As a result, Steffes Group was not entitled to summary judgment.

3.  *Other claims*.  Having rejected the application of the DDSA, the district court dismissed count II of the plaintiff's petition without prejudice.  As noted above, count II has allegations beyond the DDSA involving the execution of the contract in this case and allegations of fraud.

Steffes Group's motion for summary judgment before the district court generally claims that there are no genuine issues of material fact.  It does not distinguish between count I and count II of the plaintiff's petition.  In its brief in support of the motion for summary judgment before the district court, Steffes Group focuses on issues under the DDSA but does not expressly attack the legal sufficiency of the allegations in count II or

present any undisputed facts related to the claims of invalid execution or fraud.

On appeal, Steffes Group emphasizes that count II contains elements of legal and equitable claims. Perhaps so. This contention, however, was not presented to the district court. In any event, our rules of civil procedure specifically permit the joining of legal and equitable claims. Iowa Rs. Civ. P. 1.231, .243. In cases involving both legal and equitable claims, the jury may decide the facts regarding legal questions and the bench can pass on the equitable claims. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508, 79 S. Ct. 948, 955 (1959). It may be true, as the court of appeals pointed out, that the district court's dismissal without prejudice leaves the parties as if no action had been instituted, *Windus*, 254 Iowa at 124, 116 N.W.2d at 415, but this principle does not provide a substantive basis for the dismissal of count II, even without prejudice. Based on the record before the district court and the arguments presented to it, the district court erred in dismissing count II of the petition.

### IV. Conclusion.

For the above reasons, the decision of the court of appeals is vacated and the judgment of the district court is reversed and the case remanded.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**