# IN THE COURT OF APPEALS OF IOWA

No. 22-0056
Filed January 25, 2023

**BRADLEY HOPP, MEGAN HOPP, DAWN POWELL, GRACE ROBINSON and LARRY STONE,**
Plaintiffs-Appellants,

**vs.**

**LEISTAD SYSTEMS, INC., ROGER LEISTAD, Individually, ROGER LEISTAD, as agent of Deborah Leistad, ROGER LEISTAD, as agent, owner, shareholder, president, or director of Leistad Systems, Inc., ROGER LEISTAD, as agent of Edward Leistad, DEBORAH LEISTAD, Individually, DEBORAH LEISTAD, as agent, shareholder, director, or officer of Leistad, Inc., DEBORAH LEISTAD as beneficiary of the Estate of Edward Leistad and as beneficiary of The Edward L. Leistad Revocable Trust Dated September 27, 2016, the EDWARD REVOCABLE TRUST dated September 27, 2016,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Clay County, Charles Borth, Judge.

Plaintiffs appeal the grant of summary judgment for defendants on claims stemming from a contract dispute. **AFFIRMED.**

Ryan Beardshear of Metcalf & Beardshear, Moville, for appellants Megan and Bradley Hopp.

Anne J. Quail of Quail Law, PLC, Spencer, for appellants Grace Robinson, Dawn Powell, and Larry Stone.

Elizabeth R. Meyer and Logan S. Kraus of Dentons Davis Brown, for appellees Roger Leistad and Leistad Systems, Inc.

Nick Critelli and Lylea Critelli of Critelli Law, P.C., Des Moines, for appellee Deborah Leistad.

Martin L. Fisher of Fisher Law Firm, Adair, for appellees Estate of Edward L. Leistad and Edward L. Leistad Revocable Trust.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Plaintiffs Bradley Hopp, Megan Hopp, Dawn Powell, Grace Robinson, and Larry Stone were associate distributors of Leistad Systems, Inc., which sold branded promotional products from Safeguard Business Systems, Inc. They sued Leistad Systems, along with the estate and trust of its deceased owner, Edward Leistad; his wife, Deborah; and his brother, Roger, after Leistad Systems was sold to Safeguard without paying the associate distributors under a termination provision. The district court granted the motions for summary judgment filed by the Leistad defendants on all of the associate distributors' claims. The associate distributors appeal.

## I.    Background Facts and Proceedings

Edward Leistad owned a business called Leistad Systems, Inc., which operated under the name of "Safeguard Midwest." Leistad Systems ran a regional distributorship that sold branded promotional products to business customers under a contract with Safeguard Business Systems, Inc. Edward entered into this contract with Safeguard in January 1987, which appointed him as a distributor of Safeguard products and services "with the right to solicit sales of them to customers located in [his] territory." He later assigned the contract to his company, Leistad Systems.

Part of the sales for Leistad Systems came through Edward himself, but others were accomplished through associate distributors, who earned commissions for their sales of Safeguard products. At the start of a relationship with an associate distributor, Edward or Leistad Systems would enter into a contract with the distributor. Bradley and Megan Hopp signed their contract in April

2002, Dawn Powell in 2005, and Grace Robinson in July 2012, with an amendment in January 2013. Larry Stone, who was originally an associate distributor for a different distributor, did not have a contract with Edward or Leistad Systems when he started selling for them in 1998, though Edward wrote him a letter in 2001 outlining the terms of their agreement. Although contracts for Powell and Stone could not be located, the parties agreed that all of them contained a provision for payments after termination of the agreement.

That provision in the Hopps' contract with Leistad Systems stated:

> We will make payments to you or your estate after termination of this Agreement under the following circumstances:
> (A) If, after this Agreement has been in effect for more than five (5) years and your total yearly sales exceed $200,000 (i) you die or become permanently disabled; and (ii) you transfer your rights under the Agreement to us, we will pay you (or your estate) for four (4) years after the effective date of termination 50% of net earned commissions otherwise due to you under the then current commission schedule on all repeat sales of Safeguard Systems to customers from whom you were entitled to receive commissions while this Agreement was still in effect. . . .
> (B) We will make additional payments to you (or your estate) if we sell the Rights to receive commissions to which you would have been entitled except for termination and you or your estate are then entitled to payments under (A) above. . . .

Robinson's contract contained a similar, though not identical, "Payments After Termination" provision:

> Leistad will make payments to Robinson after terminations of this Agreement under the following circumstances:
> (A) If Robinson terminates the Agreement after 5 years.
> (B) If Robinson dies or becomes permanently [disabled] within the first 5 years of the Agreement.
> (C) If, after this Agreement has been in effect for more than five (5) years, you die or become permanently disabled, or you transfer your rights under the Agreement to us, Leistad will Pay Robinson for four (4) years after the effective date of terminations or expiration, 50% of the commissions due Robinson on all repeat sales of Safeguard products to customers from whom Robinson was

entitled to receive commissions while this Agreement was still in effect. . . .

In September 2016, Edward informed his brother, Roger, that he had been diagnosed with cancer. Around the same time, Edward and his wife, Deborah, created trusts, into which they transferred all of their shares in Leistad Systems. The following July, Edward exchanged a series of emails with Powell about his plans for the company after his death. He mentioned selling his distributorship to Safeguard but said he would never do so "without making sure all my associates would also have a good deal. . . . Above all, you will not be left hanging high &[] dry." In response, Powell questioned: "[W]ould that mean that all the distributors in our distributorship would have to sign new contracts?" Edward's answer is not in the record but, in September, he asked his brother Roger to help with the sale of the distributorship to Safeguard with the hope that "the sales teams at his distributorship could continue to work together."

Edward died on October 2, 2017, triggering a sixty-day termination provision in his regional distributorship agreement with Safeguard. The Hopps' contract with Leistad Systems in turn provided that it would terminate sixty days after termination of that regional distributorship agreement, or on January 30, 2018. Though her contract did not contain that same termination provision, Robinson admitted it terminated on the same date as the Hopps' contract, as did Powell and Stone.

Near the end of October, Roger began negotiating Leistad Systems' sale to Safeguard. The negotiations resulted in an asset purchase agreement signed by Deborah on behalf of Leistad Systems and Edward's trust on January 31, 2018. Under this agreement, Leistad Systems sold its assets to Safeguard for

$650,000.00 and entered into a management services agreement to facilitate the transfer of the distributorship. Roger was named as Leistad Systems' representative under the agreement and charged with the "handling of the day-to-day operations of the Business on a temporary basis."

As part of the sale of Leistad Systems to Safeguard, Megan Hopp, Powell, Robinson, and Stone had to sign new associate distributor agreements with Safeguard. These agreements did not contain the same "Payments After Termination" provisions their old contracts had. Using a template form from Safeguard, Roger sent the new associate distributor agreements to Hopp, Powell, Robinson, and Stone to review on January 22, 2018. He encouraged them "to take the opportunity to review and discuss your [a]greement with your legal counsel" before signing, although he wanted the signed agreements returned to him by January 29.

After reviewing the agreement, Powell questioned: "Am I missing something or did Safeguard take out the part where if we leave Safeguard we get repeat commissions for a set amount of time? So, it is my understanding that if I die or if I quit, after 30 days I am just done?" Piggy-backing on Powell's email, Robinson asserted: "As Dawn stated, we are vested associates. Anything less is unacceptable." In reply, Roger emailed the group that the "'vested' issue is . . . complicated" and best explained "in a one on one format." He closed his email by summarizing:

> The current Purchase Agreement Debbie has is a good one. The Management Services Agreement I will have with Safeguard at the closing is a good one. The Associate Agreements are good ones and provide positive foundation for all of you going forward. I also believe it is good for Safeguard. This is a Win-Win for all parties

involved. This is not the time to bicker on the "vested" issue relating to termination. This can be addressed in the way forward. Signing these Agreements insures you are "vested" with your base of customers and "vested" with the current commission structure provided to you by Ed, and "vested" to market Safeguard Products in the territories you have been serving. Please don't blow it!

Megan Hopp executed her new agreement on January 29, 2018, while Powell and Robinson signed theirs on January 30. Stone also signed a new agreement, although his is not in the record. Bradley Hopp did not sign one. Megan Hopp, Powell, Robinson, and Stone kept selling Safeguard products as associate distributors through the end of 2018 when Safeguard sold the rights to Leistad Systems' former territory to a different regional distributorship. Roger's management services agreement was terminated, which prompted the termination of the 2018 associate distributor agreements.

The Hopps, Powell, and Robinson, filed a multi-count petition against Leistad Systems; Edward's estate and trust; and Deborah and Roger in their individual and representative capacities in January 2020. Their petition included claims for fraudulent misrepresentation, inducement, and nondisclosure; tortious interference with a contract; breach of good faith and fair dealing for franchise agreements under Iowa Code section 537A.10 (2020); breach of fiduciary duty in wrongfully dissolving their partnership with Edward; and unjust enrichment. In May 2021, Deborah moved for summary judgment on all of the claims against her, which was followed by similar motions from the other defendants. Around the same time, the associate distributors successfully added a claim under Iowa Code chapter 684, Iowa's Voidable Transactions Act. And Stone was allowed to intervene in the proceedings as a plaintiff against the Leistad defendants.

Following a hearing on the motions, the district court entered a ruling dismissing all of the associate distributors' claims. The court found that "[e]ach and every one of the Plaintiffs' claims rely upon [their] claim that they should have received some payment due to their claimed 'vested rights' under the payment-after-termination provisions of the associate distributor [agreements] that they had entered into prior to their January 2018 agreements." The court reasoned those claims could not succeed because, whether or not they signed the new agreements, their old contracts terminated on January 30, 2018. The associate distributors appeal.

## II.    Standard of Review

As our supreme court recently stated in *Kostoglanis v. Yates*:

> The standards for granting summary judgment are well established and need not be repeated in full herein. We review summary judgment rulings for correction of errors at law. Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. We view the evidence in the light most favorable to the nonmoving party.

956 N.W.2d 158–59 (Iowa 2021) (cleaned up).

## III.    Analysis

### A.    Claims for fraud, tortious interference, breach of good faith and fair dealing in franchise agreement, and unjust enrichment

Each of these claims seeks damages for the loss of the associate distributors' termination payments in their original contracts with Leistad Systems. Though grounded in different theories, the associate distributors claim their right to those payments was lost because the Leistad defendants persuaded them to sign new agreements in 2018 that did not have the payment-after-termination

provisions. In moving for summary judgment on these claims, the Leistad defendants argued the associate distributors could not prove they were damaged because their old contracts terminated on January 30, 2018, and they did not satisfy the conditions precedent necessary to receive the termination payments under those contracts. While the district court hung its hat on the former argument, we conclude both have merit. *See Little v. Davis*, 974 N.W.2d 70, 73 (Iowa 2022) ("We can affirm the district court's grant of summary judgment on any ground urged on appeal that was also raised in the district court.").

We first observe that even though not all of the contracts provided they would terminate sixty days after Leistad Systems' regional distributorship agreement with Safeguard terminated,[1] all of the associate distributors admitted that fact in their resistances to the summary judgment motions and in their briefs on appeal. As a result, if they had not entered into new associate distributorship agreements with Safeguard, their old agreements with Leistad Systems would have terminated on January 30, 2018. The district court accordingly found that any rights the associate distributors may have had under their old agreements "expired as a matter of law upon the termination of their contracts on January 30, 2018, regardless of whether or not they signed the 2018 agreements. They would, therefore, not be entitled to any damages thereunder."

The associate distributors argue the court erred in reaching that conclusion because their right to the termination payments survived the termination of their

---

[1] As far as we can tell, the Hopps' contract is the only one that contained this particular termination provision. Robinson's contract did not have a similar provision, and the contracts for Powell and Stone could not be located.

contracts.[2]  *See Lorenzen Steffen Ins. Agency, Inc. v. United Fire & Cas. Co.*, No. 02-0113, 2003 WL 1967963, at *3 (Iowa Ct. App. Apr. 30, 2003) (discussing contract provisions that survived the termination of the contract).  But that would be true only if the conditions precedent to those payments were met.  *See Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct. App. 1979) ("Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." (cleaned up)).  The undisputed facts show they were not.

Before payments after termination would be made to the Hopps, their contract required the agreement to have been in effect for more than five years with total yearly sales exceeding $200,000 and (1) "you die or become permanently disabled" or (2) "you transfer your rights under the Agreement to us." A separate provision allowed for "additional payments to you (or your estate" if Leistad Systems sold "the Rights to receive commissions to which you would have been entitled except for termination *and* you or your estate are then entitled to payments" under the preceding paragraph.  (Emphasis added.)  Robinson's agreement, although phrased differently, also required that she die, become permanently disabled, or transfer her rights under the agreement to Leistad Systems before becoming entitled to payments after termination.

---

[2] For the first time in their reply brief, the associate distributors also argue that their pre-2018 contracts with Leistad Systems were ambiguous.  Our supreme court has "long held that an issue cannot be asserted for the first time in a reply brief." *Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992).  We accordingly grant the Leistad defendants' motion to strike this portion of the associate distributors' reply brief and do not consider the argument further.

There is no dispute that the associate distributors were not deceased or permanently disabled. The focus is instead on the third condition—whether their rights under the agreement were transferred to Leistad Systems. The associate distributors argue that "absent the fraudulent conduct by Defendants," they "could have, and would have, enforced their rights under [the contracts] upon termination and demanded a return on their investment." Even upon viewing the facts in the light most favorable to the associate distributors, and affording them every legitimate inference the record will bear, we cannot find support for that assertion in the record. *See Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 76 (Iowa 2022).

The Hopps' contract had a provision addressing assignment of their rights under the agreement, which stated:

> You must transfer all your Rights either to another person or us. You may not assign or transfer your Rights within the first five (5) years. If you wish to transfer your Rights after five (5) years, the follow must first occur:
> (A) You first offer us your Rights on the terms described below. This offer to us must be in writing and it must include a list of all the customers in respect of whom you enjoy Rights. If we do not accept the assignment of your Rights within thirty (30) days after we receive your offer, then
> (B) You may transfer your Rights to a third person who must be approved by us and by Safeguard, but we and Safeguard agree not to unreasonably withhold approval. . . .

The Hopps did not take any steps to transfer their rights under the agreement to Leistad Systems before or after the contract terminated. Nor did it appear they intended to do so.

Megan Hopp was asked at her deposition:

> Q. Okay. So my question to you is at what point in time did you go back to this 2002 agreement and offer your rights in writing

to Leistad, Inc., to Safeguard, to anybody?  When did you do that?
A.  Go back to this agreement and offer my rights in writing?

Q.  Yeah.  That's what it says.  You have to offer us your rights.
You have to put your offer in writing.  Did you do that?  A.  There
wasn't a need to do that.

Q.  Okay.  Why— A.  Why would I need to do that?  I'm sorry.
I don't understand why I would need to do that.

Her husband, Bradley, testified similarly at his deposition:

Q.  Okay.  Can you tell me what you did within that 120 days
to preserve any rights that you might have had in that contract after
Ed's death?  A.  We were still trying to figure out how all the dust was
going to settle.  At that time, I had not gone back and reread the 2002
contract, so I was not aware of the . . . 120-day notice.  It was
Christmas time and we were busy with a lot of other things, and so I
just—I didn't know what we needed to do.  And, again, based on our
establishment of a trust relationship and based on emails from Ed
that he was looking out for our equity, I trusted that individuals were
going to take care of and do their portion that they needed to do
based on Ed's will and defend our equity.

But the contract put the onus on the Hopps to request that Leistad Systems accept the assignment of their rights under the contract.  And Leistad Systems' acceptance was not required, under either the Hopps' contract or Robinson's contract, which simply provided that Robinson's rights under the agreement "may not be assigned . . . without the prior written consent of Leistad and Safeguard, which will not be unreasonably withheld."

Because the undisputed facts show the conditions precedent for the termination payments were not met, the associate distributors cannot show they were damaged by entering into the new agreements in January 2018, which allowed them to continue selling Safeguard products and receive commissions for their sales.  We accordingly conclude the district court did not err in entering summary judgment on these claims.

**B.     Claim for wrongful dissolution of partnership**

For this claim against Leistad Systems and Edward's estate, the associate distributors argue they were partners with Edward in the selling of Safeguard products.  As partners, they assert Leistad Systems and Edward owed them a fiduciary duty in dissolving the partnership and distributing its assets.  The associate distributors seek either specific performance of the partnership agreement or "damages for the past and future value of [their] ownership interest in the Leistad-Safeguard distributorship."  The district court granted summary judgment on this claim, finding the "undisputed facts . . . as evidenced by the various written contracts between the parties, show an express intention to create the relationship of principal and independent sales agent," not partners.  We agree.

The written contracts that appear in the record describe the relationship between the associate distributors and Leistad Systems as "that of principal and independent sales agent, and not employer and employee or buyer and seller."  The associate distributors argue "the failure of the words 'partner' or 'partnership' to appear in the parties' written agreements is not dispositive."  While that may be true, *see Thorp Credit, Inc. v. Wuchter*, 412 N.W.2d 641, 647 (Iowa Ct. App. 1987), the conduct of the parties and the circumstances surrounding the transaction do not show an intent to associate or the elements necessary to create a partnership. *See Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 785 (Iowa 1985) (listing those elements but noting the "intent of the parties to associate as partners is 'the crucial test'" (citation omitted)).

The district court aptly summarized the record on the partnership elements:

There is no evidence that Defendants ever shared profits with Plaintiffs. There is no evidence that Defendants co-owned any of the assets of Leistad Systems. There is no evidence that Plaintiffs had control over Leistad Systems. There is no evidence that the parties' tax returns were ever filed as if their association was a partnership.

The associate distributors point to their website, which lists them as "Associate Partners." However, this change was made sometime after they were employed with Leistad Systems and only because, according to an email from Edward, it sounded "more impressive than distributors." That does not show an intent to become partners. *See id.* at 787 ("When a party refers to himself or herself as a partner in the course of a conversation, courts are very reluctant to give the statement any weight at all."). Nor does the withholding of some of Megan Hopp's commission payments over a ten-year period to pay a regional distributor for the purchase of his distributorship. This was not a sharing of profits with Hopp but instead a term of her relationship with Leistad Systems as an independent sales agent for that distributorship area. The district court correctly granted summary judgment as to this claim.

## C. Claim for voidable transaction

This leaves the associate distributors with their voidable-transaction claim under Iowa Code chapter 684. This statute "advances the principle that a debtor's property constitutes a fund from which the debtor's obligations should be paid and the debtor may not frustrate a creditor's right to obtain satisfaction from the fund." *Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995). "When a debtor disposes of property with the intent to delay or defraud creditors, we deem the disposition inequitable and will set it aside." *Id.* The associate distributors cast themselves as creditors of Edward and Leistad Systems and claim the Leistad

defendants "knowingly transferred the assets out of Leistad Systems" to Safeguard "with the intent to delay or defraud" them.

The district court granted summary judgment on this claim, finding "[f]irst, Plaintiffs and Defendants are in no way parties to the creditor-debtor relationship" and second that the associate distributors "cannot establish, as a matter of law, that any fraud was perpetrated by the Defendants."[3]  We agree with the latter conclusion.  The undisputed facts show that the sale of Leistad Systems' assets to Safeguard "was nothing more than a routine asset-purchase agreement transacted by an owner-operator looking for an exit."  *Algreen v. Gardner*, No. 17-0104, 2018 WL 3057438, at *3 (Iowa Ct. App. June 20, 2018).  We affirm the grant of summary judgment on this claim.

## IV.  Conclusion

Upon viewing the evidence in the light most favorable to the associate distributors, we find no genuine issues of material fact precluding summary judgment on their claims against the Leistad defendants.  We accordingly affirm the district court's grant of summary judgment on those claims.

**AFFIRMED.**

---

[3] We note the voidable-transactions claim was added to the associate distributors' petition after the Leistad defendants filed their motions for summary judgment. The district court nevertheless included the claim in its ruling.  While the associate distributors note that the court made a sua sponte ruling on the claim, they do not assign that as error on appeal.  *See Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 498 (Iowa 2019) (holding "unbriefed issues" were waived).  So we consider the issue waived and proceed to the merits.